UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 03:06-CR-00186-LRH-RAM |
| ) | |
| v. ) | |
| ) | ORDER |
| DAVID LEROY LANTRY, ) | |
| ) | |
| Defendant. ) | |

Three motions are currently before this court. The first is Defendant's Motion to Suppress (#31). The Government has filed an opposition to this motion (#37) to which Defendant has replied (#42).

The second motion is Defendant's Motion to Inspect and Produce Personnel Files of Federal Law Enforcement Officers and Walker River Tribal Police Officers (#32). The Government has filed a response to this motion (#38) to which Defendant has replied (#43).

The third motion is Defendant's Motion for Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 404(b) (#33). The Government has filed a response to this motion (#36) to which Defendant has replied (#41).

**I. Motion to Suppress**

**A. Facts**

The following facts are gathered from the exhibits supporting Defendant's motion to

suppress. The Government does not contest Defendant's version of the facts. Therefore an evidentiary hearing is unnecessary to decide Defendant's motion. *See United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (quoting *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

On December 6, 2006, Damon Edminston, Supervisory Special Agent for the Bureau of Indian Affairs, was assisting the Walker River Tribal Police in serving a warrant to search Defendant's house. As Edminston watched, officers entered Defendant's house. Edminston then heard multiple gunshots, after which injured officers exited the house.

Later, Jacob Quintero, the stepson of Defendant, exited the house. Quintero was injured. He told Edminston that his father was shot and bleeding in the house.

After a lengthy period of time–at about 3:00 pm–Defendant yelled out of the house that he wanted to come out. Defendant then crawled out of the house completely naked with gunshot wounds on his stomach. At this point law enforcement officers had surrounded the house.

Edminston asked Defendant, "Where is the gun?" Defendant replied, "The one that I had? It flew out of my hand when they shot me."

**B. Discussion**

Defendant is moving to suppress all evidence derived from his statement upon crawling out of his house. He bases this claim upon the rule announced in *Miranda v. Arizona*, 384 U.S. 436 (1966), which generally requires courts to exclude statements elicited during custodial interrogation when they were not preceded by certain warnings.

The Government does not contest that Defendant's statement was made during a custodial interrogation; however, the Government argues that his statements is nonetheless admissible at trial because it falls within the "public safety exception" announced in the U.S. Supreme Court decision

*New York v. Quarles*, 467 U.S. 649 (1984).

In *Quarles*, a police officer was informed by a woman that she had just been raped. *Id.* at 651. She also reported that the perpetrator was currently inside a supermarket and carrying a gun. *Id.* at 651-52. When the officer entered the supermarket, the defendant ran away, causing the officer to lose sight of him for several seconds. *Id.* at 652. When the officer regained sight of the defendant, the officer ordered him to stop. *Id.* The officer then frisked the defendant and discovered he was wearing an empty shoulder holster. *Id.* The officer handcuffed the defendant and asked him where the gun was. *Id.* The defendant nodded in a particular direction and said, "[T]he gun is over there." *Id.* The officer found the gun, placed the defendant formally under arrest, and read him his Miranda warnings. *Id.*

In the defendant's state prosecution for criminal possession of a weapon, the trial judge excluded the statement, "The gun is over there" and the gun itself because the officer did not give the defendant Miranda warnings before asking him where the gun was. *Id.* at 652-53.

The New York Court of Appeals affirmed this exclusion, but the U.S. Supreme Court reversed. *Id.* at 653, 660. The Court held that "on these facts there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved." *Id.* at 655-56. The Court defined its new rule further by stating that the "doctrinal underpinnings of Miranda . . . [do not] require that it be applied in all its rigor to a situation in which police officers ask questions *reasonably prompted by a concern for the public safety*." *Id.* at 656 (emphasis added).

The Court found that the public safety exception applied in the defendant's case because "[s]o long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." *Id.* at 657. The Court also found that

3

"[t]he exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it. We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id* at 658-59.

Turning to the case at bar, the court concludes that the public safety exception applies to Defendant's response to Agent Edminston's question, "Where is the gun?" That is, the defendant's statement, "The one that I had? It flew out of my hand when they shot me" was in response to a question reasonably prompted by a concern for the public safety. At that point, Agent Edminston could not have been certain whether there were still accomplices inside the house or whether someone could still be endangered by the gun. From an objective standpoint, therefore, Agent Edminston's question was motivated by a need to neutralize a volatile situation in which officers and Defendant had recently been shot, rather than an opportunity to collect evidence for later prosecution.

Defendant argues that the public safety exception does not apply because he clearly did not have a gun on his person. While the court appreciates that the Defendant probably did not pose much of a danger after crawling out of his house naked, it is not this fact that determines the public safety exception's applicability. Agent Edminston's question was designed to quell any further danger that the gun could have posed. The fact that Defendant may have not presented any further danger in relation to that gun is immaterial.

**II. Motion to Inspect and Produce Personnel Files of Federal Law Enforcement Officers and Walker River Tribal Police Officers**

Defendant also moves this court to order the Government to inspect and produce personnel files of all law enforcement officers it intends to call as witnesses. Defendant lists fourteen individuals who he believes should be subject to this requested order.

In its response, the Government states that it does not intend to call all fourteen individuals

listed by Defendant; however, the Governments states that it intends to comply with Defendant's request with respect to the federal officers whom the Governments intends to call at trial. The court agrees that the Government need only produce the files of witnesses who it intends to call at trial. *See United States v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1991) (discussing the procedure the prosecution must follow when a defendant requests the personnel files of *testifying* officers). Thus, Defendant's motion to produce is granted to the extent that he requests exculpatory evidence contained within the personnel files of federal law enforcement officers whom the Government intends to call at trial.

The Government also contends that it is not obligated to inspect and produce files pertaining to four tribal police officers: Robert Holbrook, Joseph McMinn, Roman Sanchez, and Brian Howe. The Government cites to 25 C.F.R. § 12.21(b), which states that "[t]ribal law enforcement officers operating under a BIA contract or compact are not automatically commissioned as Federal officers; however, they may be commissioned on a case-by-case basis." The Government states that none of the above four tribal police officers were commissioned as federal officers at the time of the alleged crime, and they are still not commissioned as federal officers at time of its filing. The Government also points out that under the Ninth Circuit decision *United States v. Dominguez-Villa*, 954 F.2d 562 (9th Cir. 1992), it is not obligated to review state law enforcement files not within its possession or control.

The court agrees that if these four officers were not commissioned as federal officers, and their personnel files are not within the Government's possession or control, then the Government is not obligated to examine or produce their personnel files. Because 25 C.F.R. § 12.21(b) makes a distinction between tribal law enforcement officers who are commissioned as federal officers and those who are not, the court is persuaded that noncommissioned tribal officers are not subject to oversight that would require the Government produce their personnel files under *Dominguez-Villa*. However, the Government is hereby put on notice that if it these tribal officers were in fact

commissioned as federal officers on the date of the alleged crime, or if the tribal officers' personnel files come into the Government's possession, the Government must examine these officers' personnel files for exculpatory evidence and deliver that evidence to Defendant.

**III. Motion for Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence Rule 404(b)**

Defendant also moves this court to order the Government to provide notice of the general nature of any evidence the Government intends to introduce under Federal Rules of Evidence 404(b). Defendant further requests that the Government produce this notice one month before trial. The Government responds that while it intends to provide reasonable notice of the general nature of Rule 404(b) evidence, it opposes an order requiring it to produce this evidence one month before trial. Instead, the Government states that it will practice due diligence in providing notice of its intent to use Rule 404(b) evidence.

The court grants Defendant's motion for notice of the Government's intent to introduce Rule 404(b) evidence. The Government is therefore ordered to produce notice of the general nature of the Rule 404(b) evidence it intends to introduce at trial two weeks before the scheduled trial date. That is, the Government must provide this notice on or before June 3, 2008.

IT IS THEREFORE ORDERED that Defendant's motion to suppress (#31) is DENIED.

IT IS FURTHER ORDERED that the Government produce exculpatory evidence contained within the personnel files of the federal law enforcement officers whom the Government intends to call at trial.

IT IS FURTHER ORDERED that if the four tribal officers involved in this case were in fact commissioned as federal officers on the date of the alleged crime, or if the tribal officers' personnel files come into the Government's possession, the Government shall examine the tribal officers' personnel files for exculpatory evidence and deliver that evidence to Defendant.

IT IS FURTHER ORDERED that Defendant's Motion for Notice of Intent to Introduce

6

Evidence Pursuant to Federal Rules of Evidence 404(b) (#33) is GRANTED, and the Government shall therefore produce notice of the general nature of the Rule 404(b) evidence it intends to introduce at trial on or before June 3, 2008.

IT IS SO ORDERED.

DATED this 6th day of November, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE